1  CUNEO GILBERT & LADUCA, LLP
   William Anderson (Admitted *Pro Hac Vice*)
2  wanderson@cuneolaw.com
   507 C Street, NE
3  Washington, DC 20002
   Tel: (202) 789-3960
4  Fax: (202) 789-1813

5  Attorneys for Plaintiff

6  [Additional Counsel Appear On Signature Page]

7

8

9                    **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

11  | WILLIAM PRECHT, individually and on behalf of all others similarly situated, | CASE NO.  SACV 14-01148-DOC (MANx) |
    | --- | --- |
12  |  | **CLASS ACTION** |
    | Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
13  |  |  |
    | v. |  |
14  |  |  |
    | KIA MOTORS AMERICA, INC., |  |
15  |  |  |
    | Defendant. |  |
16  |  | Date:         December 1, 2014 |
    |  | Time:         8:30 a.m. |
17  |  | Judge:        Hon. David O. Carter |
    |  | Trial Date:    Not Set |
18
19  |  | Complaint Filed:  July 21, 2014 |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES .......................................................................ii

PRELIMINARY STATEMENT ...................................................................1

FACTUAL BACKGROUND.......................................................................3

ARGUMENT ............................................................................................4

I.     Plaintiff Has Stated Claims under the UCL, CLRA, and FDUTPA. ...................4

    A.    Plaintiff Has Standing to Pursue UCL and CLRA Claims................................4

    B.    Plaintiff Has Properly Pleaded His State Law Consumer Protection Claims. ..9

    C.    Plaintiff Has Plausibly Alleged Defendant's Prior Knowledge. ....................11

    D.    Plaintiff Has Sufficiently Pleaded Reliance. ....................................14

II.    Plaintiff Has Stated Express and Implied Warranty Claims. ............................16

    A.    Plaintiff Has Properly Stated a Claim for Breach of Implied Warranty. ........16

    B.    Plaintiff Has Properly Pleaded His Magnuson-Moss Warranty Act Claim. ...18

    C.    Defendant Breached Its Obligations under the Express Warranty.................20

    D.    Plaintiffs State Actionable Claims for Common Counts................................22

CONCLUSION.........................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237
(C.D. Cal. May 22, 2013) ............................................................... 12

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................... 9

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ................................ 4

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) ...................................... 7, 8

*Cafasso, United States ex rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047
(9th Cir. 2011) ............................................................................... 9

*Chamberlan v. Ford Motor Co.,* 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ................. 22

*Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365 (N.D. Cal. 2010) ............. 6

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal 4th 163, 999 P.2d 706, 96 Cal.
Rptr. 2d 518 (2000) ......................................................................... 9

*Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036 (1999) ................... 7

*Doyle v. Chrysler Grp.*, 2014 WL 3361770 (C.D. Cal. July 3, 2014) ......................... 16

*Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............. 10, 15

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012) .............. 4, 5, 7, 8

*Gentges v. Trend Micro Inc.*, 2012 WL 2792442 (N.D. Cal. July 9, 2012) ................. 6

*Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P.2d 897
(1963) ......................................................................................... 20

*Haney v. Cal-W. Reconveyance Corp.*, 2011 WL 2472244
(C.D. Cal. June 21, 2011) ................................................................. 22

*Herremans v. BWM of N. Am., LLC*, 2014 WL 5017843
(C.D. Cal. Oct. 3, 2014) ............................................................. 15, 16

Hicks v. Kaufman & Broad Home Corp., 89 Cal. App. 4th 908 107 Cal. Rptr. 2d 761
(2001) ......................................................................................... 21

*Horvath v. LG Electronics MobileComm U.S.A., Inc.*, 2012 WL 2861160 (S.D. Cal.
Feb. 13, 2012) ............................................................................... 23

*In re IPhone S4 Consumer Litig.*, 2013 WL 3829653
(N.D. Cal. July 23, 2013) ......................................................... 5, 6, 7, 9

*In re Mattel, Inc.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008) ...................................... 6

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television
Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................ 7

*In re Sony VAIO Computer Notebook Trackpad Litig.*, 2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) ................................................................................ 17

*In re Tobacco II Cases,* 46 Cal.4th 298, 207 P.3d 20, 93 Cal.Rptr.3d 559 (2009) .... 14, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................ 17, 19

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 884 (C.D. Cal. 2011) ................................ 6

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) ......... 19

*Jones v. Bock*, 549 U.S. 199 (2007) ............................................................................ 19

*Kearney v. Hyundai*, 2010 WL 9093204 (C.D. Cal. June 4, 2010) .............................. 19

*Kim v. Allen*, 2012 WL 1656750 (C.D. Cal. May 2, 2012) ...................................... 5, 8

*L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219 (9th Cir. 1989) ..................................................................................... 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555  (1992) .................................................. 4

*MacDonald v. Ford Motor Co.*, 2014 WL 1340339 (N.D. Cal. Mar. 31, 2014) .......................................................... 10, 13, 14

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038 (9th Cir. 2011) ......... 18

*Mazza v. Am. Honda Motor Co, Inc.*, 666 F.3d 581 (9th Cir. 2012) ........................ 5, 7

*Mike Nelson Co. v. Hathaway*, 2005 WL 2179310 (E.D. Cal. Sept. 8, 2005) ............ 22

*Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168 (D. Nev. 2003), aff'd on other grounds sub nom., *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005) ................................................................................... 19

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir.1989) .......................... 10

*Oracle Corp. v. SAP AG*, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) ................... 22

*Parker v. J.M. Smucker Co.*, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ............ 22

*Peterson v. Mazda Motor of Am., Inc.*, 2014 WL 4494872 (C.D. Cal. Sept. 9, 2014) ....................................................................... 11

*Peterson v. Mazda Motor of Am., Inc.*, 8:13 Civ. 1972 (DOC) (AN), Doc. 29 (July 3, 2014) .................................................................... 13, 16, 17

*Roberts v. Electrolux Home Prods., Inc.*, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) ........................................................................ 16

*Sanchez-Knutson v. Ford Motor Co.*, 2014 WL 5139306 (S.D. Fla. Oct. 7, 2014) .... 19

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) .................................................... 19

*TRC & Assocs. v. NuScience Corp.*, 2013 WL 6073004 (C.D. Cal. Nov. 18, 2013) .... 5

*Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) .......... 10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 11

*Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) ................................ 6

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 889, 15 P.3d 243, 103 Cal. Rptr. 2d 32 (2001) ........................................................................................ 7

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ................................ 14

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003 (2d Cir. 1991) ........................................................................................................ 21

**STATUTES**

§ 2301(a)(3)(C)(ii) ...................................................................................................... 18

15 U.S.C.A. § 2310(d)(1) ............................................................................................ 18

Cal. Comm. Code § 2314(1) ........................................................................................ 16

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................. 9, 12

## PRELIMINARY STATEMENT

Defendant Kia Motors America, Inc. ("Kia") was aware of, but actively concealed, that the brake switch systems in its cars were defective. While Kia and its sister company Hyundai have recalled millions of vehicles due to this defect, tens of thousands that have not been recalled possess the very same defect. Kia refuses to pay to fix the brakes of these unrecalled cars. This case concerns the legality of Kia's behavior.

After Defendant refused to pay to fix the dangerous brake defect in his two year old Kia, and ignored his request to informally resolve these claims on behalf of other similarly affected consumers, William Precht brought this action under state and federal law seeking redress for Kia's actions. Specifically, Mr. Precht has alleged claims under California's Unfair Competition Law ("UCL"), the Consumers Legal Remedies Act ("CLRA"), and the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"). Plaintiff has also brought claims for breach of express and implied warranty, as well as for violation of the federal Magnuson-Moss Warranty Act ("MMWA"). In response, Defendant has moved to dismiss all of these claims. Its arguments are without merit, and should be denied.[1]

At the outset, Defendant claims Plaintiff lacks standing to bring claims under the UCL and the CRLA. But there is no question that Plaintiff has "standing" to bring this suit under California law. Defendant cannot show as a matter of law that California law does not apply in this case.

Next, Defendant makes several arguments as to why Plaintiff's UCL, CLRA, and FDUTPA claims fail. None has merit. First, Kia contends that Plaintiff has not met Rule 9(b)'s heightened pleading standard for the UCL and CLRA claims. In fact, Plaintiff has sufficiently pleaded the "who, what, why, when, and how" required under Rule 9(b)—particularly under the less stringent version of the rule employed in

---

[1] Under Rule 41(a)(i), Plaintiff is filing a Request for Dismissal without prejudice of the cause of action for negligence.

1   fraudulent concealment cases such as this one. Moreover, at the very least, the portion
2   of Plaintiff's UCL claim not sounding in fraud survives.

3        Second, Defendant argues that Plaintiff has failed to allege knowledge and
4   reliance. But even assuming these are elements of CLRA and UCL claim, the
5   Complaint contains factual allegations sufficient to suggest Kia's knowledge of the
6   defect. And California law requires courts to presume reliance where, as with the
7   safety issue at play here, there are sufficient facts plead to demonstrate the omission
8   is material.

9        Defendant next attacks Plaintiff's implied warranty of merchantability claim,
10  arguing that it fails because Plaintiff lacks privity with Defendant. However, as this
11  Court has already found under virtually identical circumstances, California law
12  provides that where, as here, the plaintiff is a third party beneficiary of the underlying
13  agreement, an implied warranty exists.

14       Kia also contends that Plaintiff's MMWA claim should be dismissed because
15  Plaintiff has not specifically pleaded that he satisfied the informal dispute resolution
16  process set forth in Kia's express warranty. But the Ninth Circuit has squarely held
17  that failure to comply with informal dispute resolution is not an element of this claim.
18  And since the Complaint alleges that Kia expressly has refused to extend its recall
19  and pay for these repairs, at most this is a disputed factual issue that can only be
20  raised as an affirmative defense.

21       Finally, Defendant argues that Plaintiff cannot state a claim for breach of
22  express warranty. In large part, this argument is based upon an erroneous
23  interpretation of the warranty in question. Thus, as explained below, Plaintiff's
24  breach of express warranty claim, as well as the alternative claim in assumpsit,
25  should survive.

26       For all these reasons, this Court should deny Defendant's motion to dismiss, or
27  alternatively grant Plaintiffs leave to file an amended Complaint.

28

# **FACTUAL BACKGROUND**

Defendant Kia Motors America, Inc. is a corporation headquartered in, and organized under the laws of, California. FAC at ¶ 35. From California, Kia is responsible for "[t]he design, manufacture, distribution, service, repair, [and] modification" of Kia vehicles, as well as for "decisions not to provide reimbursement for repairs relating to the" brake defect at issue in this case. FAC at ¶ 36. Kia is the sister company of Hyundai. FAC at ¶ 5. Hyundai Motor Group owns both the Kia and the Hyundai car brands. Hyundai and Kia share the Hyundai Kia America Technical Center, Inc., which is also located in California. FAC at ¶ 8. The very same person from HATCI—Robert Babcock—handled all NHTSA communications for Hyundai and Kia regarding the brake switch defect. *Id.*

In 2009, Hyundai issued a brake switch recall for over half a million cars. FAC at ¶ 5. Hyundai's press release for NHTSA Recall 09V122000 explained that the recall was due to the fact that "THE STOP LAMP SWITCH IN THE AFFECTED VEHICLES MAY MALFUNCTION. . . . A STOP LAMP SWITCH MALFUNCTION MAY ALSO AFFECT THE OPERATION OF THE BRAKE TRANSMISSION SHIFT INTERLOCK FEATURE SO THE TRANSMISSION SHIFTER WOULD NOT BE ABLE TO SHIFT OUT OF THE PARK POSITION." FAC at ¶ 6.

In March 2013, Kia and Hyundai recalled 1.6 million more vehicles due to an identical brake switch problem. FAC at ¶ 8. However, Kia declined to recall the 2011 Kia Sportage, the 2008-2010 Kia Optima, and the 2008-2011 Kia Sedona. FAC at ¶ 9. Instead, Kia warranted, and continues to warrant, that these non-recalled vehicles were safe and defect free. After it was revealed that these vehicles had the same defect as those Kia recalled, Kia refused to explain why it chose not to recall these models. FAC at ¶ 14.

Plaintiff William Precht purchased a new 2011 Kia Sportage from a Kia dealership in May 2011, two years after the initial set of recalls. FAC at ¶ 27. In the

Winter of 2013, Mr. Precht began having an intermittent problem with his brakes. FAC at ¶ 29. "Specifically, [he] was unable to put the car in gear even after depressing the brake pedal," forcing him "to manually access an override in order to permit the vehicle to be placed into drive again." FAC at ¶¶ 29-30. Comparing this description to the description of the initial recall, Mr. Precht's 2011 Kia Sportage had the same defect as the millions of Kia and Hyundai vehicles recalled from 2009 to 2013.

Other persons who bought or leased Kia models that were not recalled have reported the same defect. Kia customers complained, publicly and to Kia, about the defect at least as early as May 2012, but likely earlier. FAC at ¶ 45. Kia has also received complaints about the brake defect from NHTSA and from its dealers. FAC at ¶ 18. Kia also knew about the defect from its own internal testing. FAC at ¶ 18.

These were material omissions, since had Mr. Precht and other Kia customers known about the brake defect, they would not have bought or leased Kia vehicles at the prices they did, if at all. FAC at ¶ 20.

## ARGUMENT

**I.     Plaintiff Has Stated Claims under the UCL, CLRA, and FDUTPA.**

    **A.     Plaintiff Has Standing to Pursue UCL and CLRA Claims.**

Defendant first argues that "Plaintiffs lack standing to assert claims under California's consumer protection laws." Def. Mem. at 4. This contention misconstrues constitutional and California law.

Preliminarily, Defendant "appear[s] to misunderstand the concept of standing." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012). "[S]tanding requires that (1) the plaintiff suffered an injury in fact . . . (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff meets these three requirements: (1) he has suffered an economic

loss, (2) which is the result of Defendant's conduct, and (3) that injury can be redressed by a favorable decision by this Court. FAC at ¶ 15. Nor does Defendant contend that any of these three standing requirements is unmet.

Defendant's argument in fact "conflate[s] two issues: the extraterritorial application of California consumer protection laws (or the ability of a nonresident plaintiff to assert a claim under California law), and choice-of-law analysis (or a determination that, based on policy reasons, non-forum law should apply.)." *In re IPhone S4 Consumer Litig.*, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (quoting *Forcellati*, 876 F. Supp. 2d at 1160); *see also Kim v. Allen*, 2012 WL 1656750, at *2-3 (C.D. Cal. May 2, 2012) ("[C]hoice of law is not the same thing as standing.").

"Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Forcellati,* 876 F. Supp. 2d at 1160 (citing *Mazza v. Am. Honda Motor Co, Inc.*, 666 F.3d 581, 589-90 (9th Cir. 2012)). Here, Plaintiff alleges: that Defendant is based in California, FAC at ¶ 35; that "Kia markets and arranges for the distribution of automobiles nationwide from its Irvine, California headquarters," FAC at ¶ 35; that "Kia Motors America, Inc. is the franchisor of Kia dealerships, including the dealership from which Plaintiff purchased his Class Vehicle," FAC at ¶ 35; that "[t]he design, manufacture, distribution, service, repair, modification and decisions not to provide reimbursement for repairs relating to the Defect regarding the Class Vehicles were performed by Defendant, either independently or in connection with its parent company," FAC at ¶ 36; and that "Defendant developed the owner's manual, warranty booklets and information included in maintenance recommendations and/or schedules for Class Vehicles," FAC at ¶ 37. These allegations meet Plaintiff's initial burden of demonstrating a connection to California to shift the burden to Defendant. *Cf. TRC & Assocs. v. NuScience Corp.*, 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013) ("The

Complaint is not based solely on a commercial transaction outside of California, but is instead based on material misrepresentations originating in California with NuScience, traveling through Florida, and ending up in Ohio with TRC. . . . Therefore, the Court finds that extraterritoriality does not bar the UCL and FAL claims against Lumina."); *iPhone S4 Consumer Litig.*, 2013 WL 3829653, at *7 (declining to dismiss out of state plaintiffs' California consumer protection claims where "Plaintiffs have alleged that Apple's purportedly misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and that all 'critical decisions' regarding the marketing and advertising were made within the state"); *Wang v. OCZ Tech. Grp., Inc.,* 276 F.R.D. 618, 630 (N.D. Cal. 2011) ("Though Wang's allegations of OCZ's California-based conduct are general, they provide a sufficient basis at the pleading stage for the invocation of California law. . . . [T]he facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved, or otherwise controlled from [OCZ's] headquarters in California.'"); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants."); *In re Mattel, Inc.,* 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("Plaintiffs have adequately alleged that Mattel and Fisher–Price's conduct occurred, if at all, in—or had strong connections to—California. Plaintiffs complain of misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California." (citation omitted)).[2]

---

[2] Defendant relies on cases that are patently distinguishable. For example, Defendant cites *In re Toyota Motor Corp.*, 785 F. Supp. 2d 884 (C.D. Cal. 2011). But there, the plaintiffs failed to allege that the advertisements upon which their claims were premised disseminated from California. *Id.* at 917-18; *see also Gentges v. Trend Micro Inc.*, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012) (dismissing California

1    Because "Plaintiff certainly *can* assert a claim under California law," the

2    burden shifts to Defendant "to defeat the presumption that California law applies and

3    to show a compelling reason justifying displacement of California law." *Forcelli*, 876

4    F. Supp. 2d at 1160 (internal quotation marks and alterations omitted); *see also Bruno*

5    *v. Eckhart Corp.*, 280 F.R.D. 540, 546 (C.D. Cal. 2012) (Carter, J.) (noting that "[t]he

6    California Supreme Court has expressly held that, when conducting a California

7    choice-of-law analysis, the defendant must 'shoulder the burden of demonstrating

8    that foreign law, rather than California law, should apply to class claims.'" (quoting

9    *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 889, 15 P.3d 243, 103

10   Cal. Rptr. 2d 32 (2001)). In order to meet this burden, a defendant must first show

11   that "differences in state law are 'material,' that is, they 'make a difference in this

12   litigation.'" *Id.* (quoting *Mazza*, 666 F.3d at 590). And if a "true conflict" exists, the

13   defendant must demonstrate that, "[u]nder the facts and circumstances of this case,"

14   the foreign jurisdiction has a greater interest in the case than California. *Mazza*, 666

15   F.3d at 594.

16        First, Defendant has not—and at the pleading stage, cannot[3]—demonstrate at

17   that the laws of California and Florida are meaningfully different. *See Forcelli*, 876 F.

18

19   consumer protection claims where "[n]one of the Plaintiffs resides in California *and*

20   *none of the conduct that forms the basis of this action arose here*" (emphasis added)).

     Not so here. Moreover, Defendant's argument that this Court should not apply

21   California law because of California's "presumption against the extraterritorial

     application of its statutes" is circular. Def.'s Mem. at 4. That presumption applies

22   only where the *conduct* at issue occurred outside California; here, Plaintiff has

     alleged that, while he resides outside the state, the relevant conduct occurred in the

23   state. *See iPhone S4 Consumer Litig.*, 2013 WL 3829653, at *7 ("California's

     presumption against the extraterritorial application of its statutes therefore does not

24   bar the claims of the out-of-state Plaintiffs, because the principle 'is one against an

25   intent to encompass conduct occurring in a foreign jurisdiction in the prohibitions and

     remedies of a domestic statute.'" (quoting *Diamond Multimedia Sys., Inc. v. Superior*

26   *Ct.*, 19 Cal. 4th 1036, 1060 n.20 (1999)).

27   [3] "In a putative class action, the Court will not conduct a detailed choice-of-law

     analysis during the pleading stage." *In re Sony Grand Wega KDF–E A10/A20 Series*

28   *Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal.

     2010) (collecting cases); *see also Forcellati*, 876 F. Supp. 2d at 1159-60 (same).

Supp. 2d at 1160 (rejecting defendants' argument that plaintiff lacked "standing" to bring claims under California consumer protection laws where "Defendants do not even discuss the differences between the consumer protection laws of New Jersey and California, let alone address whether these differences are material based on the facts and circumstances of *this* case."); *see also Allen*, 2012 WL 1656750, at *2 ("Plaintiff Allen is a citizen of Florida and Plaintiff Xenos is a citizen of Georgia. Defendants do not argue that Florida or Georgia have materially different consumer protection laws than California. Accordingly, there is no basis at this time for the Court to conclude that it would be inappropriate to apply California law to Plaintiffs' claims."). Second, even if Defendant had demonstrated that the laws of California and Florida were meaningfully different (it has not), Defendant has not met its burden of demonstrating that, under the facts of this case, Florida has a greater interest in this litigation than California. *See Forcellati*, 876 F. Supp. 2d at 1161 ("Defendants can only meet [their] burden by engaging in an analytically rigorous discussion of each prong of California's 'governmental interests' test . . . ."). Therefore, Defendant has not met its burden of demonstrating that California law does not apply in this case.

Despite its failure to demonstrate that California law should not apply, Defendant insists that "because plaintiff bought his vehicle and suffered his alleged injury outside California, he is precluded under *Mazza* from availing himself of California's consumer protection laws." Def.'s Mem. at 6. But as Defendant knows, *Mazza* stands for no such proposition. Instead, *Mazza*—an opinion concerning nationwide class certification under California law, not whether an out-of-state plaintiff has standing to bring a claim under California law—simply "precludes the application of California law to class members from states whose consumer protection laws differ *materially* from California's." *Allen*, 2012 WL 1656750, at *2. "It does not categorically rule out application of California's laws to out-of-state class members." *Id.*; *see also Bruno*, 280 F.R.D. at 547 (explaining that *Mazza* requires consideration of the particular "facts and circumstances" of the case before the court,

1   and concluding that "*Mazza* did not announce a change in state law that would allow
2   Defendant[] to substitute *Mazza*'s holding in lieu of Defendant['s] own careful
3   analysis of choice-of-law rules as applied to this particular case"); *iPhone Consumer*
4   *Litig.*, 2013 WL 3829653, at *9 (same).

5       For all these reasons, this Court should reject Defendant's argument that
6   Plaintiff lacks standing to pursue his California consumer protection claims.

7       **B.      Plaintiff Has Properly Pleaded His State Law Consumer Protection**
8              **Claims.**

9       Defendant next argues that Plaintiffs UCL, CLRA, and FDTUPA claims fail
10   because Plaintiffs allegations do not satisfy Rule 9(b)'s heightened pleading
11   requirements. This is simply untrue. And even if it were true, a portion of Plaintiff's
12   UCL claim does not sound in fraud.

13       Claims sounding in fraud must state "with particularity the circumstances
14   constituting fraud." Fed. R. Civ. P. 9(b). [4] "To satisfy Rule 9(b), a pleading must
15   identify the who, what, when, where, and how of the misconduct charged, as well as
16   what is false or misleading about the purportedly fraudulent statement, and why it is
17   false." *Cafasso, United States ex rel v. Gen. Dynamics C4 Sys.,* Inc., 637 F.3d 1047,
18   1055 (9th Cir. 2011) (internal quotation marks and citations omitted).

19       Where, as here, the claim at issue is based on "omissions" and "acts of
20   concealment," FAC at ¶ 58, the claim "can succeed without the same level of
21   specificity required by a normal fraud claim." *Baggett v. Hewlett-Packard Co.,* 582 F.
22   Supp. 2d 1261, 1267 (C.D. Cal. 2007). This is because a plaintiff alleging an
23   omission-based fraud will "not be able to specify the time, place, and specific content
24   of an omission as precisely as would a plaintiff in a false representation claim." *Id.* at

---

25   [4] Moreover, Plaintiff disputes that these claims sound in fraud. The UCL is a strict
26   liability statute. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal 4th 163,
     999 P.2d 706, 96 Cal. Rptr. 2d 518 (2000) (explaining that a claim for a violation of
27   the "unlawful" prong of the UCL is a strict liability offense). And the CLRA only has
     one intent element in Civ. Code Section 1770(a)(9), and that subsection is not
28   asserted in this case. The purpose of the CLRA was to not interpose the elements of a
     fraud claim onto the CLRA.

1267 (quoting *Falk v. General Motors Corp.,* 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)). A plaintiff need only plead a fraudulent omission claim with at least sufficient particularity "so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989).

Here, the Complaint contains detailed facts sufficient to allow Defendant to prepare an adequate defense to its fraudulent conduct. Specifically, the Complaint alleges the "who" (Defendant and its authorized representatives), FAC at ¶¶ 34-40; the "what" (intentionally concealing material facts regarding the vehicles' defective breaks), FAC at ¶¶ 5, 15-18; the "how" (failing to disclose the existence of the defect), FAC at ¶¶ 5, 15-18; the "when" (at the time of purchase through the time the defect became known to Plaintiff and class members), FAC at ¶¶ 5, 15-18; and the "where" (the channels through which Defendant disseminated information concerning its cars), FAC at ¶¶ 34-40. Plaintiff has therefore satisfied Rule 9(b)'s pleading requirements. This is particularly so given the less stringent form that these requirements take in fraudulent omission cases. *Cf. Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796, at *5 (C.D. Cal. Aug. 22, 2014) ("Plaintiff has identified the 'who' (Chrysler); the 'what' (knowing about yet failing to disclose to customers, at the point of sale or otherwise, that the TIPM 7 installed in Plaintiffs' vehicles was defective and posed a safety hazard (¶¶ 1–2, 19)); the 'when' (from the time of the sale of the first Class Vehicle until the present day (¶¶ 28–40, 97)); and the 'where' (the various channels through which Chrysler sold the vehicles, including the authorized dealers where Plaintiffs' purchased their vehicles). The court therefore concludes that Plaintiffs' factual averments are sufficient to allow Chrysler to prepare an adequate answer from the allegations."); *MacDonald v. Ford Motor Co.*, 2014 WL 1340339, at *6 (N.D. Cal. Mar. 31, 2014) ("Plaintiffs adequately allege the 'who what when and how,' given the inherent limitations of an omission claim. In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the

1    sale of Class Vehicles, and the 'where' is the various channels of information through

2    which Ford sold Class Vehicles.").

3            What's more, not all of the allegations undergirding Plaintiff's consumer

4    protection claims sound in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

5    1104 (9th Cir. 2003) (explaining that where some of plaintiff's allegations sound in

6    fraud and others do not, "only the allegations of fraud are subject to Rule 9(b)'s

7    heightened pleading requirements"). Specifically, Plaintiff alleges that Defendant

8    violated the UCL by selling vehicles with defective breaks, because selling defective

9    and dangerous vehicles "greatly outweighed" "any potential countervailing benefit to

10   consumers or to competition." FAC at ¶ 59. This claim, on its own and absent any

11   allegation of fraudulent intent, constitutes a viable claim under the UCL. *Cf. Peterson*

12   *v. Mazda Motor of Am., Inc.*, 2014 WL 4494872, at *6 (C.D. Cal. Sept. 9, 2014)

13   (Carter, J.) ("Under the balancing test, a business practice is unfair if the harm to the

14   victim outweighs the utility of the defendant's conduct. Here, Ms. Peterson has

15   alleged that Mazda 'designed, manufactured, distributed, and sold [vehicles] with a

16   defective VVT assembly that Mazda knew was defective and likely to fail and result

17   in a catastrophic engine failure.' FAC ¶ 90. She alleged that this defect created a

18   safety risk for drivers and passengers because the consequences of the defect included

19   partial and total engine failure. *Id.* ¶ 21. She also alleged that Mazda failed to replace

20   her defective vehicle, or reimburse her for the $1000 she spent to repair it. *Id.* ¶¶ 55,

21   57, 77. Mazda has not made an argument about the utility of its conduct. Taking Ms.

22   Peterson's allegations as true, this Court finds that Ms. Peterson has adequately stated

23   a claim under the 'unfair' prong of the UCL.").

24       **C.    Plaintiff Has Plausibly Alleged Defendant's Prior Knowledge.**

25           Defendant next argues that Plaintiff has failed to adequately plead that Kia

26   knew of the purported defect when Plaintiff bought his vehicle, which knowledge

27   gives rise to Defendant's duty to disclose material facts. In fact, Plaintiff has pleaded

28

1    more than enough factual allegations to plausibly suggest Defendant had prior

2    knowledge of the break defect.

3          As an initial matter, Rule 9(b)'s heightened pleading requirements do not apply

4    to allegations of knowledge and intent. *See* Fed. R. Civ. P. 9(b) (providing that

5    "intent, knowledge, and other conditions of a person's mind may be alleged

6    generally"). Thus, even to the extent it is relevant to such claims, Plaintiff need only

7    allege facts raising "a plausible inference that Defendant knew of the [] Defect at the

8    time of the sale." *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *7

9    (C.D. Cal. May 22, 2013).

10         The Complaint contains factual allegations that, together or independently,

11   suggest that Defendant had knowledge of the defect before Plaintiff purchased his

12   car. First, Plaintiff alleges that Defendant knew of the brake defect since at least April

13   2009—over two years before Plaintiff purchased his car—when "Hyundai (Kia's

14   sister company) issued a brake switch recall for 532,633" Hyundai cards of various

15   models. FAC at ¶ 5. Importantly, the brake switch problem with the Hyundai cars

16   was *identical* to the brake switch defect issue here. FAC at ¶¶ 6, 8. Second, Plaintiff

17   points to consumer complaints from "complaints to [NHTSA], information received

18   from dealers, and its own internal records" concerning the existence of the brake

19   switch defect at issue here. FAC at ¶ 18, 45. Third, Plaintiff alleges that other Kia

20   models, which contain the exact same defect part, have since been recalled by Kia.

21   Finally, Plaintiff alleges that the recall announcements were issued by not only the

22   same company (HATCI), but the very same person (Robert Babcock). FAC at ¶¶ 5, 8.

23   These allegations taken together are more than sufficient to suggest Kia's knowledge

24   of the brake defect.

25         Defendant contends that the Hyundai recall is irrelevant, because the recall

26   concerned "a *different* manufacturer" and "*different* vehicle makes and models not at

27   issue." Def.'s Mem. at 8. Likewise, Kia argues that the consumer complaints and Kia

28   recall are irrelevant, because they occurred "*after* [Plaintiff] purchased his vehicle."

*Id.* But Kia is wrong on both counts. Indeed, courts have rejected nearly identical arguments. For example, in *MacDonald v. Ford Motor Co.*, plaintiffs alleged that Ford issued three technical service bulletins regarding the defective coolant pump, and contended that these TSBs plausibly suggested prior knowledge of the same defect in plaintiffs' vehicles. Ford argued that these TSBs failed to plausibly suggest that Ford had prior knowledge because one TSB, though issued before plaintiffs purchased their cars, concerned different car models, while the other two were issued after plaintiffs' purchases. The court nonetheless held that all three bulletins plausibly suggested that Ford knew of the defect in plaintiffs' vehicles. 2014 WL 1340339, at *4.

Here, the 2009 Hyundai recall—involving the same defective switch for the same defective problem issued by the same person—reasonably suggests that Defendant was aware of the brake switch defect before Plaintiff's purchase. As *MacDonald* demonstrates, this is not undermined by the fact that the recall concerned different cars. *See id*, ("Although the first TSB related only to the 2005 Ford Escape Hybrids, it is plausible that Ford knew of the defect in other model years because Plaintiffs allege the allegedly defective part in their vehicles is the same.").[5] *Cf. Peterson v. Mazda Motor of Am., Inc.*, 8:13 Civ. 1972 (DOC) (AN), Doc. 29 (July 3, 2014), at 9 (holding that Mazda's technical service bulletins issued before the date of sale plausibly suggest knowledge of the engine problem at issue in the litigation, despite the fact that the TSB concerned a different engine problem than that alleged by plaintiff). Moreover, here, as in *MacDonald*, the allegations concerning Defendant's later knowledge lends additional plausibility to the suggestion that Defendant knew of the defect. This is particularly so because at least two of the consumer complaints set forth in the Complaint occurred only a year after Plaintiff

[5] Nor does it matter that the recall concerned cars branded "Hyundai" while the cars at issue in this litigation are brand "Kia," because the complaint alleges that the two brands are controlled by the same company. Indeed, not only was the recall implemented by Kia's sister company, it was also carried out by an entity that is jointly responsible for handling Kia's recalls.

purchased his car. *Cf. MacDonald*, 2014 WL 1340339, at *4 (bulletins issued after plaintiffs' purchases were probative of knowledge because they were issued within two years of the purchase of all named plaintiffs).

In support of its argument to the contrary, Defendant relies primarily on the Ninth Circuit's decision in *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136 (9th Cir. 2012)*. In Wilson,* the Ninth Circuit concluded that the plaintiffs' allegation that Hewlett–Packard was aware of an alleged computer defect at the time of sale because HP had "access to the aggregate information and data regarding the risk of overheating" was "speculative and [did] not suggest how any tests or information could have alerted HP to the defect." *Id.* at 1146-47 (internal citations and quotation marks omitted). But *Wilson* is inapposite. Importantly, the plaintiffs in *Wilson* did not allege that the defendant knew prior to the time of sale that other models of the product made by the defendant or its sister company contained the exact same defect. And while the complaint in *Wilson* did allege the existence of fourteen customer complaints, twelve of those complaints were undated, and the other two bore dates "two years after Plaintiffs purchased the Laptops." *Id*. at 1148. Thus, even if the Court ignored all the other evidence supporting Defendant's prior knowledge, *Wilson* does not undermine *McDonald*'s assertion that complaints made within two years of a plaintiff's purchase are probative of prior knowledge.

### D.    Plaintiff Has Sufficiently Pleaded Reliance.

Finally, Defendant argues that Plaintiff's consumer protection claims fail because Plaintiff has not alleged actual reliance. This argument, however, is predicated on a misstatement of California law.

While it is true that a plaintiff pleading fraud-based claims under the CLRA and UCL must plead actual reliance, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *In re Tobacco II Cases,* 46 Cal. 4th 298, 327, 207 P.3d 20, 93 Cal.Rptr.3d 559 (2009).[6]

---

[6] And again, a portion of Plaintiff's UCL claim does not sound in fraud. Plaintiff is not required to demonstrate reliance for this portion of his UCL claim.

1    "A misrepresentation is judged to be material if a reasonable man would attach

2    importance to its existence or nonexistence in determining his choice of action in the

3    transaction in question, and as such materiality is generally a question of fact unless

4    the fact misrepresented is so obviously unimportant that the jury could not reasonably

5    find that a reasonable man would have been influenced by it." *Id.* at 327 (internal

6    quotation marks and citations omitted); see also *Falk*, 496 F.Supp.2d at 1096 (about

7    safety considerations of vehicle are material).

8         Here, the omission at issue concerned the functionality of the vehicles' brake

9    system. Whether the brakes in a car work is unquestionably material to a reasonable

10   consumer. Accordingly, this Court should presume that Plaintiff relied on

11   Defendant's omission to his detriment. *Cf. Herremans v. BWM of N. Am., LLC*, 2014

12   WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014) ("Herremans has sufficiently alleged

13   that a reasonable consumer would have found the water pump defect material in

14   deciding whether or not to purchase a class vehicle. The court may thus reasonably

15   infer Herremans' actual reliance on the failure to disclose of that material

16   information.").

17        Defendant nonetheless argues that Plaintiff cannot show reliance, because he

18   has failed to plead that he would have seen the disclosure about the brake defect had

19   it been made. But this argument has failed where, as here, reliance is presumed. For

20   example, Judge Morrow recently considered, and rejected, a nearly identical

21   argument in *Herremans*. There, a plaintiff filed a class action against BMW, arguing

22   that BMW had concealed a water pump defect in the Mini Cooper. BMW took the

23   position that the plaintiff had could not "claim reliance on an omission because she

24   does not allege that she reviewed any advertisements or materials concerning Mini–

25   Coopers prior to purchase." 2014 WL 5017843, at *18. The court disagreed,

26   explaining "that precisely because reliance is presumed where an omission is

27   material, such a showing [that she reviewed materials about the car before purchasing

28   it] is not required unless the defendant rebuts the presumption. BMW, of course,

1   cannot do so in the context of a motion to dismiss." *Id*. at *19 (citing *Doyle v.*

2   *Chrysler Grp.*, 2014 WL 3361770, at *6 (C.D. Cal. July 3, 2014)). The court went on

3   to note that while "BMW may be able to make such a showing at some future point in

4   the litigation and rebut the presumption of actual reliance," the plaintiff was "not

5   required to anticipate such proof and disprove what essentially amounts to a defense

6   in her complaint." *Id*.

7          Because Plaintiff has alleged the existence of a material defect, he need not

8   make any further allegations relating to reliance.

9   **II.    Plaintiff Has Stated Express and Implied Warranty Claims.**

10         **A. Plaintiff Has Properly Stated a Claim for Breach of Implied**

11             **Warranty.**

12         "Unless excluded or modified [ ], a warranty that the goods shall be

13   merchantable is implied in a contract for their sale if the seller is a merchant with

14   respect to goods of that kind." Cal. Comm. Code § 2314(1). A plaintiff who claims a

15   breach of the implied warranty of merchantability must show that the product is

16   "unmerchantable." "Unmerchantability can result from a latent defect undiscoverable

17   at the time of purchase, particularly where the design defect can lead to a safety

18   hazard." *Peterson*, 8:13 Civ. 1972 (DOC) (AN), Doc. 29, at 4; *see also Roberts v.*

19   *Electrolux Home Prods., Inc.*, 2013 WL 7753579, at *5 (C.D. Cal. Mar. 4, 2013)

20   ("The allegedly defective design of the dryer causes lint to accumulate in close

21   proximity to the heat source, which creates a fire hazard. . . . [T]his safety defect

22   renders the dryers unfit and unmerchantable. While defendant argues that no breach

23   of the implied warranties has occurred because the dryers dry clothes despite the

24   safety defect, California courts have rejected the argument that unsafe products

25   retaining some functionality satisfy the implied warranties.")

26         Plaintiff has alleged that "[t]he Brake Switch Defect is an inherent and/or latent

27   defect that is substantially certain to manifest itself during the useful life of the Class

28   Vehicle" and that "substantially impairs the use, value and safety of the Class

---

1   Vehicles." FAC at ¶ 84. Accordingly, Plaintiff has adequately pleaded a breach of

2   implied warranty of merchantability claim.

3       Defendant argues that Plaintiff's breach of implied warranty claim fails

4   because Plaintiff lacks privity with Defendant. According to Defendant, the lack of

5   privity between Plaintiff, an end consumer, and Defendant, a car manufacturer, is

6   fatal to Plaintiff's claim, because "California law requires a plaintiff to stand in

7   vertical contractual privity with the defendant to sue for breach of the implied

8   warranty of merchantability." Def.'s Mem. at 15. Were this actually the law, no car

9   purchaser would ever be able to bring an implied warranty claim against a car

10  manufacturer since no one buys directly from Kia Motors America Inc. other than for

11  purposes of re-sale. Needless to say, California law is to the contrary.

12      "Where a plaintiff pleads that he or she is a third-party beneficiary to a contract

13  that gives rise to the implied warranty of merchantability, he or she may assert a

14  claim for the implied warranty's breach." *In re Toyota Motor Corp. Unintended*

15  *Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145,

16  1185 (C.D. Cal. 2010). Thus, the *Toyota* court held that Toyota purchasers could

17  pursue an implied warranty of merchantability claim against Toyota, despite their

18  lack of privity, where plaintiffs pleaded (1) "that they purchased vehicles from a

19  network of dealers who are agents of" Toyota and (2) that plaintiffs "were [Toyota's]

20  intended consumers." *Id.* at 1185; *see also Peterson*, 8:13 Civ. 1972 (DOC) (AN),

21  Doc. 29, at 7 ("Because Ms. Peterson alleges she purchased her vehicle from an

22  authorized Mazda representation, she has adequately pleaded privity of contract for

23  purposes of an implied warranty claim."); *In re Sony VAIO Computer Notebook*

24  *Trackpad Litig.*, 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (holding that the

25  facts as pled by plaintiffs—that the retailer from which they purchased defective

26  products was manufacture's authorized retailer and service facility—precluded

27  dismissal of a breach of implied warranty claim for lack of privity).

28

---

1   Here, Plaintiff has pleaded both that he purchased his car from a Kia agent and

2   that he was one of Defendant's intended consumers. Accordingly, Plaintiff may bring

3   an implied warranty claim.

4   **B. Plaintiff Has Properly Pleaded His Magnuson-Moss Warranty Act**

5   **Claim.**

6   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, provides a

7   federal remedy for, among other things, "a consumer who is damaged by the failure

8   of a supplier [or] warrantor . . . to comply with . . . a written [or] implied warranty."

9   15 U.S.C.A. § 2310(d)(1). Plaintiff alleges that Defendant ran afoul of the MMWA

10   by failing to abide by its express and implied warranties to Plaintiff.

11   Defendant makes two arguments as to why the MMWA claim fails. Both are

12   unavailing.

13   First, Defendant argues that the MMWA claim should fail because Plaintiff has

14   not stated a viable state law warranty claim. But this is not so. As is explained above,

15   Plaintiff has, at the very least, stated a claim for breach of implied warranty of

16   merchantability. *See* 15 U.S.C. § 2310(d)(1) (providing that a "consumer who is

17   damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under

18   a written [or] *implied* warranty" may bring a MMWA claim (emphasis added)). Thus,

19   Plaintiff's claim should not be dismissed on this ground.

20   Second, Defendant argues that "Plaintiff's failure to allege he participated in

21   [Defendant's informal dispute resolution] process [] precludes his implied warranty

22   claim under the Magnuson-Moss Warranty Act." Def.'s Mem. at 16. But this

23   argument, however, ignores binding precedent. The Ninth Circuit has specifically

24   held that the MMWA's informal dispute resolution requirement, *see* §

25   2301(a)(3)(C)(ii), is not jurisdictional, and therefore an affirmative defense. *See*

26   *generally Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038 (9th Cir.

27   2011). And it is well established that "a plaintiff is not required to plead facts in the

28   complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v.*

*Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *see also Jones v. Bock*, 549 U.S. 199, 211-12 (2007) (where failure to satisfy an exhaustion requirement constitutes an affirmative defense, a plaintiff need not plead satisfaction of the exhaustion requirement in his complaint); *Sanchez-Knutson v. Ford Motor Co.*, 2014 WL 5139306, at *12 (S.D. Fla. Oct. 7, 2014) ("Upon consideration of the relevant authority, the Court agrees with Plaintiff that failure to participate in Ford's informal dispute settlement procedure is an affirmative defense—subject to waiver, tolling, and estoppel, that Ford may raise, not that Plaintiff must negate in her Complaint.").[7]

Defendant cites one case, *Kearney v. Hyundai*, 2010 WL 9093204, at *6 (C.D. Cal. June 4, 2010), for the proposition that a MMWA claim should be dismissed for failure to plead satisfaction of information dispute resolution procedures. But that case is distinguishable for several reasons. First, in *Kearney*, the plaintiffs did not argue to the court that failure to engage in informal dispute resolution was an affirmative defense; quite the contrary, the plaintiffs there *admitted* that they had failed to comply with § 2310(a)(3)(C)(ii). This was central to this the Court decision to dismiss the MMWA case in *Kearney*. *See id.* (noting that "Plaintiffs have—by their own admission—failed to comply with [§ 2310(a)(3)(C)(ii)]"). *Cf. Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss . . . but this is not true when, as here, the defense raises no dispute issues of fact." (internal citation omitted)). Second, *Kearney* was decided before the Ninth Circuit held in *Maronyan* that failure to participate in informal dispute resolution was an affirmative defense to a MMWA claim.

---

[7] Nor does Plaintiff concede that the MMWA's informal dispute resolution requirement is applicable in this case, given that Plaintiff tried to obtain such relief and was rebuffed. FAC at ¶ 14. *See Milicevic v. Mercedes-Benz USA, LLC,* 256 F. Supp. 2d 1168, 1179 (D. Nev. 2003) (recognizing a futility exception to the MMWA's informal dispute resolution requirement), *aff'd on other grounds sub nom., Milicevic v. Fletcher Jones Imp., Ltd.,* 402 F.3d 912 (9th Cir. 2005). But again, that is an argument for another day. *See In re Toyota Motor Corp.,* 754 F. Supp. 2d at 1189 ("At the pleadings stage, the Court cannot say whether attempts to comply with the informal dispute settlement procedure put in place by Toyota are futile.").

1    In sum, Plaintiff has stated a viable claim under the MMWA.

2         **C. Defendant Breached Its Obligations under the Express Warranty.**

3    Defendant argues that Plaintiff's breach of express warranty claim also cannot

4    survive, because Plaintiff (1) did not comply with a condition precedent in the written

5    warranty and (2) did not seek repair during the express warranty period. Defendant is

6    wrong on both counts.

7         Defendant first argues that because Plaintiff failed to report the Kia

8    dealership's refusal to fix his brakes to Kia, "plaintiff failed to trigger [Kia's]

9    obligations under the warranty." Def.'s Mem. at 14. The language of the warranty

10   suggests otherwise. So does California case law, which provides that notice of a

11   breach of an express warranty is not required where the action is against a

12   manufacturer and is brought "by injured consumers against manufacturers with whom

13   they have not dealt." *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 61, 27 Cal.

14   Rptr. 697, 377 P.2d 897 (1963)).

15        Kia makes two, distinct promises to its customers through its written warranty.

16   First, Kia warrants that "it will arrange" for its dealers to the fix a customer's

17   defective car:

18        Kia Motors America, Inc. ("Kia") warrants that it will arrange for

19        independent Kia brand service facilities at locations of its choice to

20        provide for the repair of your vehicle if it fails to function properly

21        during normal use. Such service facilities will remedy such failures to

22        function properly at KMA's expense, if you present your vehicle to such

23        a service facility during its normal operating hours, provide sufficient

24        information to permit a proper identification and diagnosis of the failure

25        to function, and permit the facility adequate time to perform the

26        necessary repair.

27   RJN Ex. 1 at 9. Next, Kia promises that "[i]f an Authorized Kia Dealer declines or

28   fails" to abide by the terms set forth above, "Kia will (a) determine if the repair or

1   replacement requested by you is covered by this New Vehicle Limited Warranty and,

2   if so, (b) obtain cooperation from an Authorized Kia Dealer to conduct such repair or

3   replacement without charge to you." *Id.*

4       The first promise—that Kia "will arrange for independent Kia brand service

5   facilities at locations of its choice to provide for the repair of your vehicle if it fails to

6   function properly during normal use"—contains no such condition precedent.

7       Moreover, even if the above-mentioned terms were a condition precedent to all

8   of Defendants' obligations under the warranty, Plaintiff complied with the spirit of

9   those terms. Plaintiff, through his counsel, sent a letter to Kia detailing the defect in

10  Plaintiff's car. FAC at ¶ 14. This was sufficient to satisfy the express warranty's

11  condition precedent. At the very least, Defendant's failure to reimburse Plaintiff after

12  receiving a letter from Plaintiff's counsel suggests that complying with the condition

13  precedent in the warranty was futile. *See L.K. Comstock & Co. v. United Eng'rs &*

14  *Constructors Inc.,* 880 F.2d 219, 232 (9th Cir. 1989) (compliance with a two-day

15  notice provision not required where it would amount to a "useless gesture"); *see also*

16  *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d

17  Cir. 1991) ("[W]here it becomes clear that one party will not live up to a contract, the

18  aggrieved party is relieved from the performance of futile acts or conditions

19  precedent." (citation omitted)).

20      Defendant next argues that Plaintiff has no breach of express warranty claim

21  because Plaintiff did not seek repair of the brake defect during the life of the express

22  warranty. But as Defendant concedes, under California law, a plaintiff has stated a

23  claim for a breach of warranty action where she has pleaded facts tending to show the

24  existence of a latent defect "substantially certain" to render a warranted product

25  unusable before the end of its life. *See Hicks v. Kaufman & Broad Home Corp.,* 89

26  Cal. App. 4th 908, 923, 107 Cal. Rptr. 2d 761 (2001).

27      Defendant argues that the exception for latent and inherent defects is

28  inapplicable to cars. But in fact, while some courts have taken this position, in an

effort to narrow the scope of *Hicks*, others, have explicitly extended *Hicks* to latent defects in cars. *See, e.g.*, *Chamberlan v. Ford Motor Co.,* 369 F. Supp. 2d 1138, 1147 (N.D. Cal. 2005) (noting that "the reasoning of *Hicks* . . . applies equally well in situations where the overall product, here a car, has a limited but long useful life and a component has a defect that is substantially certain to manifest itself before the end of that useful life"). The position set forth in *Chamberlan* is in accord with the *Hicks* decision, and should be adopted here.[8]

### D.   Plaintiffs State Actionable Claims for Common Counts.

Finally, Kia argues that Plaintiffs' common law theories of assumpsit and quasi-contract fail should be dismissed, because of "the existence of a valid and enforceable express warranty." Def.'s Mem. at 17. Quite the contrary, Federal Rule of Civil Procedure 8(e)(2) permits pleading in the alternative. That is, plaintiffs may "set forth inconsistent legal theories in its pleadings and will not be forced to elect a single theory on which to seek recovery." *Mike Nelson Co. v. Hathaway*, 2005 WL 2179310, at *4 (E.D. Cal. Sept. 8, 2005). The case law is clear: Defendant "is not entitled to have a cause of action dismissed for failure to state a claim simply because" plaintiff may be entitled to recover on another claim. *Oracle Corp. v. SAP AG*, 2008 WL 5234260, at *9 (N.D. Cal. Dec. 15, 2008) (declining to dismiss plaintiff's unjust enrichment claim, despite the fact that plaintiff also pleaded a claim for breach of contract).

---

[8] If this Court decides to dismiss the breach of express warranty or any other claim, Plaintiff requests that it do so without prejudice. *See Haney v. Cal-W. Reconveyance Corp.*, 2011 WL 2472244, at *1 (C.D. Cal. June 21, 2011) ("Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment."). If given the opportunity to replead its breach of express warranty claim, Plaintiff intends to allege that Defendant's refusal to fix the brake defect constitutes a breach of various advertisements Defendant targeted at consumers, and that were relied on by Plaintiff. *See Parker v. J.M. Smucker Co.*, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (noting that an advertisement can constitute an express warranty under California law).

1    Indeed, in *Horvath v. LG Electronics MobileComm U.S.A., Inc.*, 2012 WL

2   2861160 (S.D. Cal. Feb. 13, 2012), the court rejected an argument nearly identical to

3   the one made by Defendant here. There, plaintiff brought a breach of express

4   warranty claim, as well as claims in the alternative for quasi-contract and assumpsit.

5   The defendant sought to dismiss the common count claims, arguing that "because

6   there are written agreements establishing Plaintiffs' rights and LG Electronics'

7   obligations, these quasi-contract theories are inapplicable." *Id*. at *11. The *Horvath*

8   court rejected this argument, explaining that "Federal Rule of Civil Procedure 8(e)(2)

9   permits pleading in the alternative, and the Court concludes that at this point,

10  dismissal of Plaintiffs' common law claims is premature." *Id*.

11    Here, as in *Horvath*, dismissal of Plaintiff's assumpsit claim would be

12  premature. The claim should survive Defendant's motion to dismiss.

<u>**CONCLUSION**</u>

14    In sum, Plaintiff has pleaded consumer protection and warranty claims.

15  Plaintiff has standing to bring claims under the UCL and the CLRA, and has

16  adequately pleaded those claims under Rules 8(a) and 9(b). Plaintiff's breach of

17  implied warranty claim survives because there is no privity requirement in this

18  instance. Plaintiff's MMWA claim is sufficiently pleaded because Plaintiff has no

19  duty to preempt Defendant's affirmative defense at this stage of the litigation. Nor

20  has Defendant set forth an adequate reason to dismiss Plaintiff's claim for breach of

21  express warranty.

22    The question at the center of this case is whether Kia has violated state and

23  federal law by selling cars with defective brakes, and then refusing to reimburse its

24  customers for the costs associated with repairing the dangerous defect. Plaintiff

25

26

27

28

1  submits that the answer is yes. Plaintiff therefore respectfully requests that the Court

2  deny Defendant's motion to dismiss.

3

4  Dated: November 7, 2014                    Respectfully submitted,

5                                             CONSUMER LAW GROUP OF
                                               CALIFORNIA
6

7                                             By:   /s/ Alan M. Mansfield
                                                    Alan M. Mansfield
8                                                   alan@clgca.com
                                               355 S. Grand Avenue, Suite 2450
9                                              Los Angeles, CA  90071
                                               Tel:  (310) 684-2504
10                                             Fax:  (855) 274-1888

11                                             CUNEO GILBERT & LADUCA, LLP
                                               William Anderson (*Pro Hac Vice*)
12                                             wanderson@cuneolaw.com
                                               507 C Street, NE
13                                             Washington, DC 20002
                                               Tel:  (202) 789-3960
14                                             Fax:  (202) 789-1813

15                                             CUNEO GILBERT & LADUCA, LLP
                                               Charles J. LaDuca (*Pro Hac Vice*)
16                                             charlesl@cuneolaw.com
                                               8120 Woodmont Avenue, Suite 810
17                                             Bethesda, MD 20814
                                               Tel:  (202) 789-3960
18                                             Fax:  (202) 789-1813

19                                             BARON & HERSKOWITZ
                                               Jon Herskowitz (*Pro Hac Vice*)
20                                             jon@bhfloridalaw.com
                                               9100 S. Dadeland Blvd.
21                                             Suite 1704
                                               Miami, FL 33156
22                                             Tel:  (305) 670-0101
                                               Fax:  (305) 670-2393
23
                                               Attorneys for Plaintiff William Precht
24

25

26

27

28