## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 14-1148-DOC (MANx)                Date:  December 29, 2014

Title: WILLIAM PRECHT V. KIA MOTORS AMERICA, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

   Deborah Goltz                                Not Present   
Courtroom Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:       ATTORNEYS PRESENT FOR DEFENDANT:
None Present                                     None Present

**PROCEEDINGS (IN CHAMBERS):**   **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [30]; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE [31]**

Before the Court is Defendant's Motion to Dismiss (Dkt. 30). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss and GRANTS IN PART and DENIES IN PART Defendant's Motion to Strike.

**I.     Background**

    **A. Facts**

The following facts are taken from the allegations in the First Amended Complaint ("FAC") (Dkt. 28).

This case is a class action lawsuit brought against Defendant Kia Motors America ("Defendant" or "Kia"), Inc. by Plaintiff William Precht ("Plaintiff") on behalf of himself

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                    Page 2

and a nationwide class (or in the alternative, a Florida class) of current and former owners
or lessees of the following vehicles:

- 2011 Kia Sportage manufactured after March 6, 2011,

- 2010 Kia Optima manufactured after April 29, 2010, and

- 2011 Kia Sedona vehicles manufactured after December 31, 2010

("Class Vehicles"). FAC ¶¶ 1, 46. Plaintiff alleges that each of these models contained
defective brake switches (the "Brake Switch Defect"). *Id.* The Brake Switch Defect
allegedly "can result in brake lights failing to illuminate, cruise control not cancelling
with depression of the brake pedal, the push button start not functioning and the shift
interlock remaining stuck in part so the vehicle cannot be moved." *Id.* ¶ 2. Once the
Brake Switch Defect manifests in the vehicle, the vehicle must undergo expensive repairs
to remain operable. *Id.* ¶ 3. The Brake Switch Defect frequently manifests during the
useful life of the Class Vehicles, but shortly after the limited warranty period. *Id.* ¶ 17.

Plaintiff alleges that Defendant has long known about the Brake Switch Defect
and that, despite Defendant's knowledge, Defendant failed to disclose to Plaintiff and
other consumers that the Class Vehicles are "substantially certain" to manifest the Defect
during the useful life of the Class Vehicles, diminishing the intrinsic and resale value of
the Class Vehicles and creating safety risks. *Id.* ¶ 5. Defendant also refuses to repair the
Defect or reimburse consumers for past repairs. *Id.* ¶ 3.

## 1. Brake Switch Defect

### a. Recalls of Kia and Hyundai Vehicles

Plaintiff alleges that Defendant should have known about the Brake Switch Defect
since at least April 2009, when Defendant's sister company Hyundai issued a brake
switch recall for over 500,000 2005-2008 Accent, Azera, Elantra, Entourage, Santa Fe,
Sonata, Tucson, and Veracruz models. That recall was issued through the Hyundai Kia
America Technical Center, Inc., a shared entity with shared staff which handles all recalls
for Hyundai and Kia. *Id*. ¶ 5.

On March 29, 2013, Kia and Hyundai simultaneously issued a brake switch recall
for 1.6 million vehicles, 620,000 of them Kia vehicles using similar language to
Hyundai's April 2009 recall notice. *Id*. ¶ 8. The language of the 2009 and 2013 recalls
was written by Robert Babcock from the Hyundai Kia America Technical Center, Inc. *Id.*

The March 2013 recall included the 2007-2010 Kia Sportage, 2011 Kia Optima, and 2007 Kia Sedona models, among others. *Id.* In September 2013, Kia expanded the recall to include some but not all 2011 Kia Sportage, 2010 Kia Optima, and 2011 Kia Sedona vehicles. *Id.* ¶¶ 8-9. The 2013 recalls did not include the Class Vehicles at issue in this case.

### b.  Consumer Complaints

Plaintiff alleges that Defendant should also have known about the Brake Shift Defect based on consumer complaints. In the FAC, Plaintiff provides four examples of complaints about the 2011 Kia Sportage dated 2012 and 2013. *Id.* ¶ 45.

### 2.  Plaintiff's Experience

Plaintiff purchased a new 2011 Kia Sportage from Gunther Kia in Ft. Lauderdale, Florida in May 2011. *Id.* ¶ 27. When he purchased the vehicle, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff about the existence of the Brake Switch Defect. *Id.* ¶ 34.

During Winter 2013, Plaintiff began having problems engaging the automatic transmission. He was unable to put the car into gear even after depressing the brake pedal. *Id.* ¶ 29. He sought help, but was forced to pay for diagnostics and repairs himself after Kia's authorized repair facility said that such repairs were not covered by the warranty. He paid $140 to have Gunther Kia, a certified Kia repair facility, repair the Brake Switch Defect. *Id.* ¶¶ 31-33.

Plaintiff alleges that, as a result of Defendant's omissions and/or misrepresentations of material facts associated with the Brake Switch Defect, he suffered out-of-pocket loss associated with past and future repairs and with the diminished value of his vehicle.

### 3.  Defendant's Operations

Defendant is incorporated in California and has its principal place of business in Irvine, California. Defendant is a subsidiary of Kia Motors Corporation, a South Korean company. Defendant markets and arranges for the distribution of automobiles nationwide from its Irvine headquarters. It is a franchisor of Kia dealerships, including the dealership where Plaintiff purchased his vehicle. *Id.* ¶ 35.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                        Page 4

### B.  Procedural History

This case was filed on July 21, 2014 (Dkt. 1). The operative complaint, the FAC, was filed on September 15, 2014 (Dkt. 28). The FAC alleges:

(1) violation of California's Unfair Competition Law ("UCL");

(2) violation of California's Consumer Legal Remedies Act ("CLRA");

(3) violation of Florida's Unfair and Deceptive Trade Practices Act ("FUDTPA");

(4) breach of express and implied warranties under California law, Florida law, and the federal Magnuson-Moss Warranty Act;

(5) common counts/assumpsit;

(6) negligence – failure to warn; and

(7) negligence – failure to test.

Plaintiff has since voluntarily dismissed the negligence claims pursuant to Rule 41(a)(i) (Dkt. 38).

Defendant filed the instant Motion to Dismiss and Motion to Strike on October 17, 2014 (Dkts. 30, 31). Plaintiff filed oppositions on November 7, 2014 (Dkts. 36, 37), and Defendant replies on November 17, 2014 (Dkts. 38, 39).

### II.      Motion to Dismiss

### A.  Legal Standard

### 1.  Rule 12(b)(6) and Rule 8

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, this

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                     Date: December 29, 2014
                                                                                     Page 5

court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009).

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2) This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                              Date: December 29, 2014
                                                                              Page 6

## 2. Rule 9(b)

An allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

### B. Discussion

#### 1. California UCL and CLRA Claims

California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent business act or practice[s]." Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that "Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices" through its "conduct, statements, and omissions . . . and by concealing from Plaintiff and Class members the material fact that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the Class Vehicles as a result of this Defect)." FAC ¶ 56.

California's Consumer Legal Remedies Act (CLRA) prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in the sale or lease of goods or services to any consumer. Cal. Civil Code § 1770(a). Plaintiff alleges that Defendant represented that its vehicles have characteristics, uses, or benefits that they did

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                        Page 7

not have, *id.* § 1770(a)(5); that its vehicles were of a particular standard, quality, or grade when it was of another, *id.* § 1770(a)(7); that a transaction conferred rights, remedies, or obligations which it did not, *id.* § 1770(a)(14); and that the subject of the transaction had been supplied in accordance with a previous representation when it had not, *id.* § 1770(a)(16). Plaintiff also alleges that Defendant violated the CLRA by concealing the Brake Switch Defect. FAC ¶¶ 63, 66.

Defendant asserts a number of arguments why Plaintiff's UCL and CLRA claims should be dismissed. The Court addresses each in turn.

### a. Extraterritorial Application of the UCL and CLRA

Defendant argues that Plaintiff lacks standing to assert claims under California's consumer protection laws because Plaintiff is a Florida resident who purchased his vehicle in Florida. Defendant does not argue that Plaintiff lacks Article III standing. Nor does Defendant assert in its Motion that applying California law would be unconstitutional due to the Court's lack of personal jurisdiction over Defendant or California's insufficient contacts with Plaintiff's claims. Rather, Defendant argues that Plaintiff does not satisfy the "prudential standing" or "statutory standing" requirement because Plaintiff has not shown that he "has been granted a right to sue by the statute under which he . . . brings suit." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004).

California's laws are presumed not to apply outside of California "unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999) (internal quotation marks omitted). "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). "Applying that presumption, state and federal courts have concluded that the UCL and CLRA do not reach claims of non-California residents arising from conduct occurring entirely outside of California." *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012) (collecting cases).

Nevertheless, "[s]tate statutory remedies under the CLRA and UCL may be available to non-California residents if those persons are harmed by wrongful conduct

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                          Date: December 29, 2014
                                                                                    Page 8

occurring in California." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916 (C.D. Cal. 2011). In determining whether wrongful conduct occurred in California, courts consider factors such as where the defendant does business, whether the defendant's principal offices are located in California, where the plaintiffs are located, and where the alleged actionable conduct took place. *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011).

Here, Plaintiff alleges that Defendant is incorporated in California and has its principal place of business in Irvine, California. Defendant markets and arranges for the distribution of automobiles nationwide from its Irvine headquarters. It is a franchisor of Kia dealerships, including the dealership where Plaintiff purchased his vehicle. FAC ¶ 35. Plaintiff alleges that "[t]he design, manufacture, distribution, service, repair, modification and decisions not to provide reimbursement for repairs relating to the Defect regarding the Class Vehicles were performed by Defendant, either independently or in connection with its parent company." *Id.* ¶ 36. Additionally, "Defendant developed the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for Class Vehicles." *Id.* ¶ 37.

Defendant argues that these allegations are insufficient to raise to the level of plausibility that the actionable conduct (failure to disclose material facts) occurred in California. The Court disagrees. Reading the FAC in the light most favorable to Plaintiff, the FAC sufficiently alleges that California was where Defendant made its decisions about what to communicate and what not to communicate to consumers, whether that communication was through marketing materials, instructions to franchisees, or owner's manuals and warranty booklets.

The cases cited by Defendant where the courts dismissed UCL claims for failure to adequately allege wrongful conduct in California are distinguishable. *Tidenberg v. Bidz.com, Inc.*, No. CV085553PSGFMOX, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) involved allegations more sparse than the ones present here. In that case, Plaintiff's only allegation linking defendants to California was that defendants had their principal place of business in California. *Id.* at *4. In *Bruce v. Teleflora*, *LLC*, No. 2:13-CV-3279-ODW CWX, 2013 WL 5310623, at *4 (C.D. Cal. Sept. 19, 2013), the court found that plaintiffs failed to adequately connect California to the wrongful conduct because, while plaintiffs vaguely alleged that defendant made its marketing and sales decisions from its California headquarters, plaintiffs failed to allege that the alleged wrongful conduct occurred in California. The wrongful conduct in *Bruce*, however, was non-delivery of floral arrangements or delivery of inferior floral arrangements. A court could reasonably infer that deliveries of a perishable good are less likely to be subject to centralized decision-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                        Page 9

making, than say, misrepresentations or omission of material facts about a design or manufacturing defect in cars.

Defendant further argues that, even if Plaintiff could allege a factual basis that the alleged misconduct took place in California, under *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), Plaintiff still cannot assert California UCL and CLRA claims because he bought his car in Florida.

In *Mazza*, the Ninth Circuit reviewed the district court's decision to grant class certification to a nationwide class to prosecute claims under California law, including the UCL and CLRA. *Id.* at 587-88. The *Mazza* plaintiffs alleged that the defendant "misrepresented and concealed material information in connection with the marketing and sale" of certain vehicles. *Id.* at 587. After applying a choice-of-law analysis, the Ninth Circuit vacated the district court's decision because, under the facts of that case, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

Defendant interprets *Mazza* as holding that an out-of-state plaintiff cannot bring claims under California's consumer protection laws as a matter of law, citing some district court decisions that cite *Mazza* in dismissing out-of-state residents' UCL and CLRA claims. *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013) (citing *Mazza* and dismissing out-of-state plaintiffs' UCL claims where the defendant was headquartered in California and the alleged misconduct originated in California, but the transactions at issue occurred in North Carolina); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012) (citing *Mazza* and dismissing out-of-state plaintiffs' UCL and CLRA claims where plaintiff purchased her computer in Massachusetts).

The Court is not persuaded that *Mazza* mandates dismissal of Plaintiff's claims at this stage of this case. *Mazza* did not analyze statutory standing under the UCL or CLRA. Rather, it conducted a choice-of-law analysis. *Frezza*, one of the cases cited by Defendant, only dismissed the North Carolina plaintiffs' UCL claims after conducting a choice-of-law analysis. 2013 WL 1736788, at *5-7. Here, Defendant's motion to dismiss does not ask the Court to apply a different state's laws to Plaintiff's consumer protection claims and it is the foreign law-proponent who carries the burden of persuading the Court to use non-California law. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 539 (C.D. Cal. 2011).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                                       Page 10

Thus, the Court concludes that Plaintiff has adequately alleged standing to assert California UCL and CLRA claims and DENIES Defendant's Motion to Dismiss Plaintiff's UCL and CLRA claims on lack of standing grounds.

### b.  Heightened Pleading Standard Under Rule 9(b)

Defendant argues that Plaintiff's UCL and CLRA claims are subject to Rule 9(b) and that they do not meet the heightened pleading standard. The Court agrees that Plaintiff's UCL and CLRA claims, which are based on allegations that Defendant "actively conceal[ed]" material facts and made affirmative misrepresentations about the Brake Switch Defect, FAC ¶¶ 5, 56, 63, "sound in fraud" and therefore must be pled with specificity.

Regarding the omission theory, the FAC alleges that Defendant and its authorized representatives ("who") intentionally concealed the material facts that the Class Vehicles contained the Brake Switch Defect and that the Defect was costly to repair, led to significant safety risks, and would diminish the value of the Class Vehicles ("what" and "how"). FAC ¶¶ 5, 34-40. The FAC alleges that the omission occurred at the time of purchase ("when"). *Id.* ¶ 20.  The FAC also alleges the channels through which Defendant disseminated information regarding its vehicles ("where"). *Id.* ¶¶ 34-40. The Court concludes that the FAC adequately pleads Plaintiff's UCL and CLRA claims under an omission theory.

Plaintiff also brings his UCL and CLRA claims under an affirmative misrepresentation theory. These claims are insufficiently pled, however. The FAC does not contain any specific factual allegations regarding the alleged misrepresentations. The FAC does not claim, for instance, that Defendant advertised cars that were free of brake defects. Nor does the FAC allege that Defendant or its dealer Gunther Kia told Plaintiff anything in particular about the quality or character of the brakes or of his car in general.

Accordingly, the Court DENIES Defendant's Motion to Dismiss as to the UCL claim (omission theory) but GRANTS the Motion as to the UCL claim (affirmative misrepresentation theory) and CLRA claim.

### c.  Defendant's Prior Knowledge

Defendant argues that Plaintiff fails to adequately allege that Defendant knew of the Brake Switch Defect when Plaintiff bought his vehicle.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1148-DOC (MANx)                                    Date: December 29, 2014
                                                                                        Page 11

Rule 9(b) does not apply to allegations of knowledge and intent. *See* Fed. R. Civ.
P. 9(b). Thus, Plaintiff only needs to allege facts raising "a plausible inference that
Defendant knew of the [] Defect at the time of the sale." *Avedisian v. Mercedes-Benz
USA, LLC*, No. CV 12-00936 DMG CWX, 2013 WL 2285237, at *7 (C.D. Cal. May 22,
2013).

Here, Plaintiff purchased his car in May 2011. As described above in Part I.A.1,
the FAC alleges that Defendant knew of the Brake Switch Defect as early as April 2009
(two years before Plaintiff purchased his vehicle) when Hyundai issued a recall on over
500,000 Hyundai vehicles for the same defect. FAC ¶¶ 5-6, 8. The FAC alleges that Kia
and Hyundai are sister companies and that recalls for both companies are handled
through the Hyundai Kia America Technical Center, Inc. *Id.* ¶ 5. In fact, when both
Hyundai and Kia recalled 1.6 million vehicles because of the Brake Switch Defect in
March 2013 (two years after Plaintiff purchased his vehicle), the recall notices were
worded almost identically. They were both prepared by the same person, Robert Babcock
of the Hyundai Kia America Technical Center, Inc. *Id.* ¶ 8. The FAC also alleges that
"Defendant was or should also be aware of [the Defect] as the result of Kia's bench
testing of the Class Vehicles, complaints to government agencies, complaints to Kia
customer service, complaints to Kia dealers, and internal analysis." *Id.* ¶ 18. The FAC
quotes four consumer complaints dated 2012 and 2013. *Id.* ¶ 45.

The Court agrees that the alleged consumer complaints which were either undated
or post-date the time of sale by a year or more are too attenuated to support a plausible
inference of prior knowledge. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1148 (9th
Cir. 2012). However, read in the light most favorable to Plaintiff, the allegations about
the recall and the relationship between Hyundai and Kia are sufficient to support a
plausible inference that Kia knew in 2009 that, if it used and continued to use the same
design and manufacturing process for the Class Vehicles as Hyundai did for its vehicles,
then the Class Vehicles were likely to contain the same defect when sold. The fact that
Hyundai and Kia were "sister" companies and the fact that Kia later recalled many of its
own vehicles for the same defect, including vehicles from model years both before and
after Hyundai's 2009 recall, further support the inference that Hyundai and Kia shared
similar design and manufacturing processes with respect to the brake switch.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiff's UCL
and CLRA claims on this ground.

**d. Actual Reliance**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                              Date: December 29, 2014
                                                                           Page 12

Defendant argues that Plaintiff fails to adequately allege actual reliance.

Both the UCL and CLRA require the plaintiff to allege actual reliance. *Doe v. SuccessfulMatch.com*, No. 13-CV-03376-LHK, 2014 WL 4954701, at *4-5 (N.D. Cal. Sept. 30, 2014). "[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (alteration in original). "[E]ven where, as here, a plaintiff bases his claim not on an omission from a specific advertising campaign or brochure, but on a defendant's total failure to disclose the material fact in any way, the plaintiff's claim must fail when he never viewed a website, advertisement, or other material that could plausibly contain the allegedly omitted fact." *Daniel v. Ford Motor Co.*, No. CIV. 2:11-02890 WBS, 2013 WL 2474934, at *4 (E.D. Cal. June 7, 2013); *see also Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010) (dismissing UCL and CLRA claims where plaintiff failed to allege that he would have been aware of a defect in his BMW before buying it if defendant had publicized the information).

Here, the FAC contains only a conclusory statement that "Plaintiff relied upon Defendant's warranty to his detriment." FAC ¶ 81. The FAC does not allege that Plaintiff actually read the warranty or was exposed to any statements by Defendant before buying the vehicle. Thus, Plaintiff has not adequately alleged that he relied on any affirmative misrepresentations by Defendant. He also has not alleged that, had Defendant disclosed rather than omitted material information about the Brake Switch Defect, Plaintiff plausibly would have been aware of it.

Accordingly, the Court DISMISSES Plaintiff's UCL and CLRA claims for failure to adequately allege reliance.

## 2. Florida Deceptive and Unfair Trade Practices Act (FDUTPA) Claim

Defendant argues that Plaintiff's FDUTPA claims are subject to the heightened pleading requirements of Rule 9(b) and that Plaintiff fails to meet that heightened standard. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204. "Most courts construing claims alleging violations

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                                         Date: December 29, 2014
                                                                                                        Page 13

of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002). "A fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 924 (C.D. Cal. 2011).

The FAC alleges a FDUTPA claim under a material omission theory. For the same reasons discussed in Part II.B.1.b, the Court finds that Plaintiff adequately pled a FDUTPA claim. Accordingly, Defendant's Motion to Dismiss is DENIED as to Plaintiff's FDUTPA claim.

### 3.  Express Warranty Claim

Defendant makes three arguments why Plaintiff's express warranty claim should be dismissed. The Court addresses each in turn.

#### a.  Failure to Allege Exact Terms of the Warranty

First, Defendant argues that Plaintiff's express warranty claim should be dismissed because Plaintiff failed to allege the exact terms of the warranty. Under California Commercial Code § 2313, "[i]n order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Kearney v. Hyundai Motor Am.*, No. SACV09-1298-JST MLGX, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010). Florida law also requires that express warranty terms be pleaded with specificity. *Borchardt v. Mako Marine Intern., Inc.*, 2009 WL 3856678, at *4 (S.D. Fla. Nov. 17, 2009).

Here, Plaintiff alleges that "Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiff, Class members and Defendant. Defendant gave these express warranties to Plaintiff and Class members through the issuance of its written warranty accompanying the Class Vehicles." FAC ¶ 81. Plaintiff also alleges that "[t]he Brake Switch Defect is a defect or nonconformity covered by Kia's express warranty and does not fall within any applicable exclusions." *Id.* ¶ 82. These allegations do not allege with adequate specificity what Defendant promised or represented with respect to the Brake Switch Defect in the Class Vehicles.

#### b.  Duration of the Express Warranty

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                    Page 14

Second, Defendant argues that Plaintiff's express warranty claim should be dismissed because Plaintiff did not seek repair during the warranty period. "The general rule is that an express warranty has no affect [sic] after the applicable time period has elapsed." *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006)). Under *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (2001), a plaintiff can state a claim for breach of express warranty if the defect is a latent defect that is "substantially certain to result in malfunction during the useful life of the product." *Id.* at 923. Some courts dealing with car defect cases similar to this one have refused to extend *Hicks* to car defect cases on the ground that *Hicks* involved the concrete foundation of a house, which is supposed to have an "indefinite" useful life. *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1141 (N.D. Cal. 2010). "Cars and tires," as the *Hicks* court itself observed, "have a limited useful life. At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap. If the defect has not manifested itself in that time span, the buyer has received what he bargained for." *Hicks*, 89 Cal. App. 4th at 923. Moreover, these courts have reasoned, to allow plaintiff to bring a breach of express warranty claim for a defect manifesting after the express warranty period as expired "would eviscerate any limitations put in place by an express warranty." *In re Toyota*, 754 F. Supp. 2d at 1179. In the face of the language of *Hicks* itself and the policy reasons for honoring the time limitations on express warranties, Plaintiff's citation to *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1147 (N.D. Cal. 2005), is not persuasive. Thus, this Court holds, once again, that "[a] plaintiff cannot sustain a breach of express warranty claim for a defect manifesting itself outside of the product's warrant period." *Peterson v. Mazda Motor of America, Inc.*, Case No. SACV 13-1972-DOC (ANx), slip op. at 3-4 (C.D. Cal. July 3, 2014).

Here, the FAC does not identify how long the warranty period was. However, Plaintiff alleges that the Kia authorized repair facility where he sought repairs "claimed such repairs were not covered under warranty." *Id.* ¶ 31. The only reasonable inference from these allegations is that the Defect in Plaintiff's vehicle did not manifest until after the warranty expired. Thus, Plaintiff cannot sustain a breach of express warranty claim.

### c. Pre-Suit Notice

Finally, Defendant argues that Plaintiff's express warranty claim should be dismissed because Plaintiff did not contact the Kia Consumer Assistance Center and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                           Date: December 29, 2014
                                                                                                  Page 15

therefore did not trigger Defendant's obligations under the warranty. Defendant's express warranty for the 2011 Kia Sportage, provided by Defendant, states:

> If an Authorized Kia Dealer declines or fails to carry out a proper repair or replacement of a factory installed part covered by this limited warranty without charge to you, Kia will (a) determine if the repair or replacement requested by you is covered by this New Vehicle Limited Warranty and, if so, (b) obtain cooperation from an Authorized Kia Dealer to conduct such repair or replacement without charge to you. However, Kia's obligation to do (a) and (b) requires you to contact the Kia Consumer Assistance Center and provide all materials needed by them to carry out those obligations to you.

Request for Judicial Notice ("RJN") Ex. 1 (Dkt. 30-2), at 9.

Defendant argues that "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty," and thus requires the consumer to comply with the terms of the warranty in order to sue for breach. *Seifi v. Mercedes-Benz USA, LLC*, No. C12-5493 TEH, 2013 WL 2285339, at *3 (N.D. Cal. May 23, 2013) (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992)); *see also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013).

Plaintiff argues, however, that California case law holds that, in actions "by injured consumers against manufacturers with whom they have not dealt," "even if plaintiff did not give timely notice of breach of warranty to the manufacturer, his cause of action based on the representations contained in the brochure was not barred." *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 61-62 (1963). Here, Plaintiff purchased his car from a dealership, not directly from the manufacturer. In similar factual circumstances, courts have held that *Greenman* applies, excusing consumers from notifying the manufacturer of the problem prior to bringing a breach of express warranty claim. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 994-95 (N.D. Cal. 2013); *see also Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 949-51 (C.D. Cal. 2012); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1180. Thus, the Court agrees with Plaintiff that, under California law, pre-suit notice is not required of him and putative class members who purchased their cars from a dealership rather than directly from the manufacturer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                    Page 16

Plaintiff does not contest that pre-suit notice is required under Florida law. Thus, the Court considers Defendant's Motion to Dismiss Plaintiff's Florida express warranty claim on this ground unopposed.

For the reasons above, Defendant's Motion to Dismiss is GRANTED as to Plaintiff's express warranty claims.

### 4. Implied Warranty of Merchantability Claim

Defendant argues that Plaintiff cannot sustain a claim for implied warranty of merchantability because Plaintiff, who purchased his vehicle from a dealer, is not in vertical contractual privity with the manufacturer.

### a. California Law

A plaintiff generally must establish privity of contract between the original seller and subsequent purchaser to sustain a claim for implied warranty. *Sherman v. Stryker Corp.*, No. 09-CV-0224, 2009 WL 2241664, at *3 (C.D. Cal. Mar. 30, 2009). Two parties are in privity of contract if they are in "adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.2d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)). In *Clemens*, the court held that a purchaser who buys a vehicle from a retailer is not in privity of contract with the manufacturer of the vehicle. *Id.* Therefore, at first blush, Plaintiff in this case cannot be in privity with Kia because he purchased his vehicle from a dealer. FAC ¶ 27.

There exist, however, a number of exceptions to the privity requirement. In *Clemens*, the Ninth Circuit identified exceptions "when the plaintiff relies on written labels or advertisements of a manufacturer" or "in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser." *Clemens*, 534 F.3d at 1023. *In re Toyota*, a case from this District, further identified an exception allowing a third-party beneficiary to enforce a contract made for his or her benefit event if the part is not expressly named as the beneficiary in the contract. *See In re Toyota*, 754 F. Supp. 2d at 1184. For example, "individuals who purchase a vehicle from an authorized dealership can maintain a[] . . . cause of action against the manufacturer as third party beneficiaries." *Keegan*, 838 F. Supp. 2d at 947 (following *In re Toyota*).

Some federal district courts have disagreed with *In re Toyota* on the ground that *In re Toyota* appears to contradict *Clemens*, which refused to recognize additional

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                                  Page 17

exceptions other than the ones listed in that case. *See Clemens*, 534 F.3d at 1023-24 (rejecting plaintiff's argument that the list of exceptions is exemplary rather than exhaustive); *see also, e.g.*, *Long v. Graco Children's Products Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) (declining to follow *In re Toyota* in light of *Clemens*). Another ground for disagreeing with *In re Toyota* is that *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978), one of the cases relied upon by *In re Toyota*, did not involve consumer products. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1082-83 (N.D. Cal. 2011).

Other courts, however, have reconciled *In re Toyota* with *Clemens* and continued to recognize the third-party beneficiary exception. *In re MyFord Touch Consumer Litig.*, No. C-13-3072 EMC, 2014 WL 2451291, at *30-31 (N.D. Cal. May 30, 2014); *see also Roberts v. Electrolux Home Products, Inc.*, No. CV 12-1644 CAS VBKX, 2013 WL 7753579, at *10 (C.D. Cal. Mar. 4, 2013) (following *Toyota*).

This Court places itself in the latter camp. *See Peterson*, slip op. at 6-7 (following *In re Toyota* and *Keegan*). Thus, vertical contractual privity is not needed to assert a claim for breach of implied warranty when plaintiff is a third-party beneficiary of a contract between other parties which does create an implied warranty. Such a standard for privity of contract is consistent with the goals of implied warranties of merchantability. *Keegan*, 838 F. Supp. 2d at 947 ("[T]he warranty agreements were designed for and intended to benefit the ultimate customer only.") (quoting *In re Toyota*, 754 F. Supp. 2d at 1185).

Here, Plaintiff alleges he purchased his vehicle from Gunther Kia, a local dealer. FAC ¶ 27. Gunther Kia is a certified Kia repair facility and franchisee of Defendant. *See id.* ¶¶ 32, 35. Having adequately pled that he purchased his vehicle from an authorized Kia dealership, Plaintiff has adequately pleaded privity of contract for purposes of an implied warranty claim. Accordingly, the Court DENIES Defendant's Motion to Dismiss as to the California law implied warranty claims.

### b. Florida Law

"Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty." *Foster v. Chattem, Inc.*, No. 6:14-CV-346-ORL-37, 2014 WL 3687129, at *2 (M.D. Fla. July 24, 2014). Plaintiff does not contest that vertical privity is required under Florida law. Accordingly, the Court GRANTS as unopposed Defendant's Motion to Dismiss as to the Florida law implied warranty claim.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                                    Page 18

### 5.   Federal Magnuson-Moss Warranty Act Claim

#### a.   Failure to Allege Exhaustion of Informal
####       Dispute Resolution Procedures

Defendant argues that Plaintiff's Magnuson-Moss Warranty Act (MMWA) claim fails because Plaintiff failed to allege that he participated in Kia's informal dispute resolution procedure.

The MMWA "encourage[s] warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). If the warrantor establishes such a procedure, the procedure meets certain requirements established by the Federal Trade Commission, and the warrantor "incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty," then "a class of consumers may not proceed in a class action except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the named plaintiffs (upon notifying the defendant that they are named plaintiffs in a class action with respect to a warranty obligation) initially resort to such procedure." 15 U.S.C. § 2310(a)(3). "[F]ailure to participate in [the warrantor's] informal dispute settlement procedure is an affirmative defense—subject to waiver, tolling, and estoppel, that [the warrantor] may raise, not that Plaintiff must negate in [his or] her Complaint." *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2014 WL 5139306, at *12 (S.D. Fla. Oct. 7, 2014); *see also Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040, 1042, 1043 n.4 (9th Cir. 2011) (holding that § 2310(a) is a prudential, not a jurisdictional bar to filing an MMWA claim and that failure to exhaust under § 2310(a) is an affirmative defense).

Here, Kia's express warranty provides that customers must use an informal dispute resolution procedure called BBB AUTO LINE prior to bringing an MMWA claim in court. RJN Ex. 1 at 54. The FAC contains no allegations about BBB AUTO LINE or any other informal dispute resolution procedure. However, plaintiffs are not required to negate anticipated affirmative defenses in their complaints. Defendants may assert their affirmative defenses in their answer and seek judgment on the pleadings or summary judgment if appropriate. Thus, the Court denies Defendant's Motion to Dismiss Plaintiff's MMWA claim on this ground.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                                      Date: December 29, 2014
                                                                                                  Page 19

### b.  Failure to Allege Actionable State Law Claim

Defendant also argues that Plaintiff's MMWA claim fails because Plaintiff fails to state an actionable state law express or implied warranty claim. However, because Plaintiff's California law implied warranty claims survive, Plaintiff's MMWA claim also survives.

Accordingly, the Court DENIES Defendant's Motion to Dismiss as to Plaintiff's MMWA claim.

### 6.  Unjust Enrichment

Defendant argues that Plaintiff cannot assert unjust enrichment-based common counts and assumpsit claims because (1) unjust enrichment is not a cause of action under California law; (2) neither party contests the existence of a valid and enforceable express warranty; and (3) Plaintiff has not alleged what Defendant was obligated to do in return for the benefits it allegedly received. The Court disagrees.

### a.  Unjust Enrichment Under California Law

In California, "[t]he phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). In order to obtain restitution, plaintiff must assert some substantive theory on which it is due. Quasi-contract, for instance, "can serve as the basis for the equitable remedy of restitution where one party obtains a benefit which he may not justly retain." *McKinnis v. Kellogg USA*, No. CV07- 2611ABC(RCX), 2007 WL 4766060, at *6 (C.D. Cal. Sept. 19, 2007). So can the UCL and CLRA. *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012).

Some federal district courts in California have reasoned from *Melchior* that "California law does not recognize a cause of action for unjust enrichment, so long as another cause of action is available that permits restitutionary damages." *Id.* Accordingly, when other claims survive a motion to dismiss, some courts have dismissed with prejudice plaintiff's unjust enrichment claim because the claim was unnecessary. *Id.*; *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1271 (C.D. Cal. 2007); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                                   Page 20

The Court disagrees with this approach. Nothing in the Federal Rules of Civil Procedure requires dismissal of seemingly duplicative claims at the pleadings stage. In fact, the Rules allow a party to "state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). After discovery and further motions practice, claims that seem duplicative or unnecessary at the pleading stage may turn out to be the only viable claims for trial. Unless a claim is insufficiently pled, it is premature at the pleadings stage to dismiss a claim simply because it appears duplicative.

Here, Plaintiff pleads common counts, assumpsit, and quasi-contract based on unjust enrichment principles as an alternative to his express and implied warranty claims. FAC ¶¶ 94, 98. Unless Defendant can demonstrate that Plaintiff inadequately pled those causes of action, the Court will not dismiss them even if Plaintiff has adequately pled another claim that could entitle Plaintiff to restitution.

### b. Existence of Valid and Enforceable Express Warranty

Defendant also argues that Plaintiff cannot assert unjust enrichment-based assumpsit claims because neither party contests the existence of a valid and enforceable express warranty. *See Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (dismissing Florida unjust enrichment claim because no one contested the existence of a valid and enforceable express contract); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (dismissing California restitution claim premised on unjust enrichment theory based on inconsistency with plaintiff's allegations of an express contract with defendants).

This argument is not persuasive. Defendant states that it does not contest the existence of a valid and enforceable contract between the parties but, in the same Motion, Defendant contends that no contractual privity exists between itself and Plaintiff, *see* Mot. at 15. Moreover, Defendant has just succeeded in having Plaintiff's express warranty claim dismissed, *see* Part II.B.3. If Defendant can assert seemingly inconsistent theories as to why it is not liable to Plaintiff, then, at least at the pleading stage, Plaintiff should be able to assert inconsistent theories as to why Defendant is liable. *See* Fed. R. Civ. P. 8(a)(3), (d) (permitting pleading in the alternative).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                                    Date: December 29, 2014
                                                                              Page 21

### c. Failure to Allege What Defendant Was Required to Do

Defendant also argues that Plaintiff's assumpsit claim should be dismissed for failure to plead an element of assumpsit—what Kia was allegedly required to do, and failed to do, in exchange for the benefit it allegedly received. Defendant cites *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007) for the proposition that dismissal of an unjust enrichment-based assumpsit claim is proper when the plaintiff fails to plead what obligation defendant had failed to fulfill. *Id.* at 1369. *Berry*, however, does not cite any authority for the proposition that plaintiffs must specifically plead a specific obligation of the Defendant's. "Under Florida law, the elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012).

Here, Plaintiff has pleaded that Plaintiff and putative class members conferred a benefit on Defendant by purchasing vehicles from Defendant and that Defendant benefited by retaining and profiting from those purchase payments. Plaintiff alleges that it was unconscionable for Defendant to retain that benefit because the sales were based on Defendant's violations of various consumer protection laws. FAC ¶¶ 95-97. Unless Defendant can produce stronger authority than *Berry* that more is required, these allegations appear to this Court to state a plausible claim for unjust enrichment under Florida law.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiff's unjust enrichment-based claims.

### III. Motion to Strike Class Allegations

### A. Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks and citation omitted); *RDF Media Ltd. v. Fox Broad.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                              Page 22

*Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005) ("Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic."). The Ninth Circuit has defined "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" matter as "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citation omitted), *overruled on other grounds*, 510 U.S. 517 (1994).

          To certify a class action under Federal Rule of Civil Procedure 23, a plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, the plaintiff must demonstrate that one of the requirements of Rule 23(b) is met.

          Class allegations in a complaint are typically tested on a motion for class certification, not at the pleading stage. *Collins v. Gamestop Corp.*, No. C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010). Motions to strike class allegations are generally disfavored, particularly where the arguments against the class claims would benefit from discovery or would otherwise be more appropriate in a motion for class certification. *Holt v. Globalinx Pet, LLC*, No. SACV13-0041 DOC JPRX, 2013 WL 3947169, at *3 (C.D. Cal. July 30, 2013); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, one court in this circuit has struck class allegations where it is clear from the pleadings that a class could not be certified.  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

     **B.  Discussion**

          **1.  Nationwide Class Allegation**

          Defendant moves to strike the nationwide class allegations on the ground that a nationwide class cannot be maintained because material differences in state consumer protection laws preclude the possibility of applying California and Florida consumer protection laws to the nationwide class. For instance, some states require scienter and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                    Page 23

others do not. Some require reliance and others do not. Some provide different remedies than others. Defendant attaches an appendix describing variations in state consumer protection laws (Dkt. 31-1).

This argument, which attack the Rule 23(a) commonality and Rule 23(b)(3) predominance requirements, is better brought at the class certification stage than in a motion to strike. Early in the pleadings stage, particularly when the defendant has not yet answered, neither the court nor the litigants are sure yet which facts and legal issues are in dispute. Since it is not clear yet which claims will be moving forward, it is premature to evaluate which issues could tie the class together and which differences in law might overwhelm those common issues. Here, for instance, Plaintiff's UCL and CLRA claims are being dismissed for failure to allege actual reliance. If Plaintiff adequately alleges reliance in a second amended complaint, both the choice-of-laws and the Rule 23(b) analyses could change. If Plaintiff files an amended complaint, he may add more details about the connection between the wrongful conduct and California, which would also change the analysis. Having to go through the *Mazza* analysis multiple times—with every motion to dismiss or motion to strike and at the class certification stage—is also undesirable from a judicial economy standpoint, as California's choice-of-law test, the "governmental interest" test, must be applied to the unique facts and circumstances of each case and "must be applied independently to each individual matter of law." *Holt*, 2013 WL 3947169, at *6.

Accordingly, Defendant's Motion to Strike the nationwide class allegations is DENIED without prejudice to raising the choice-of-law issues again at the class certification stage. In light of the concerns raised in the Motion, Plaintiffs are encouraged to consider carefully whether a nationwide class can be sustained or whether smaller subclasses may be more appropriate.

## 2. Other Products

Defendant argues that class allegations regarding the 2010 Optima and 2011 Sedona should be stricken because Plaintiff himself only bought a 2011 Sportage and, therefore, he lacks standing to assert claims regarding the other vehicles and would be an inadequate representative for a class including owners and lessees of those vehicles.

To have Article III standing to bring a claim, (1) plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the defendant's conduct; and (3) it must be likely that the injury can be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact" is "an invasion

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                    Date: December 29, 2014
                                                                                              Page 24

of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted).

Some courts in this circuit and outside of it have held that a named plaintiff lacks Article III standing to assert claims regarding products that he or she did not purchase. *Dysthe v. Basic Research LLC*, 2011 U.S. Dist. LEXIS 137315, 9 (C.D. Cal. June 13, 2011); *see also Chin v. Gen. Mills, Inc.*, No. CIV. 12-2150 MJD/TNL, 2013 WL 2420455, at *2-4 (D. Minn. June 3, 2013); *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 536-37 (D.N.J. 2011).[1]

On the other hand, some courts in this circuit have held that "[w]here a class action complaint encompasses both a product the plaintiff purchased and a product he did not, the plaintiff sufficiently has [Article III] standing to proceed with claims on behalf of class members who purchased the latter if there is sufficient similarity between the products purchased and not purchased." *Sharma v. BMW of North Am., LLC*, 2014 U.S. Dist. LEXIS 5399, at *6 (N.D. Cal. Jan. 15, 2014) (internal quotation marks omitted); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371, at *33-38 (N.D. Cal. July 20, 2012) (acknowledging that district courts in this circuit go both ways and collecting cases).

This latter line of cases takes its cue from *Gratz v. Bollinger*, 539 U.S. 244 (2003). *See Koh v. S.C. Johnson & Son, Inc.*, 2010 U.S. Dist. LEXIS 654, 7 (N.D. Cal. Jan. 5, 2010) (citing *Gratz* and deferring ruling on the defendant's motion to dismiss class allegations regarding a product the named plaintiff had not purchased until the class certification stage). In *Gratz*, the Supreme Court confronted an argument that the University of Michigan used race differently in undergraduate transfer admissions than in its undergraduate freshman admissions and that the named plaintiff, who went through the transfer application process, therefore lacked standing to represent absent class members who had gone through the freshman application process. The Court noted that "[a]s an initial matter, there is a question whether the relevance of this variation, if any, is

---

[1] Some courts in this circuit have also held that plaintiffs do not have statutory standing under the UCL or CLRA to assert claims based on products they did not purchase because they could not show that they were harmed by defendant's conduct related to those products. *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-CV-02630 JAM, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011); *Johns v. Bayer Corp.*, No. 09CV1935DMSJMA, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010). Because the Court has dismissed Plaintiff's UCL and CLRA claims, the Court does not address this issue.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                          Date: December 29, 2014
                                                                          Page 25

a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." *Id.* at 263; *see also id.* at 263 n.15. Saving that question for another day, the Court went on to find that the named plaintiff satisfied both the Article III standing and the Rule 23(a) adequacy of representation requirements because the University's use of race in undergraduate transfer and freshman admissions did not implicate "significantly different set[s] of concerns." *Id.* at 265-66.

          In light of *Gratz*, this Court is persuaded a named plaintiff may assert class claims regarding products he has not purchased if he or she adequately pleads "sufficient similarity" between the products purchased and not purchased.

          Here, the FAC alleges that each of the "Class Vehicles," the 2011 Kia Sportage manufactured after March 6, 2011 (which Plaintiff purchased) and the 2010 Kia Optima manufactured after April 29, 2010 and 2011 Kia Sedona manufactured after December 31, 2010 (which Plaintiff did not purchase), possess the same Brake Switch Defect. FAC ¶ 1. The FAC describes Plaintiff's experience with the Defect in this 2011 Kia Sportage. *Id.* ¶¶ 29-30. The FAC also provides a sampling of consumer complaints about the Defect in the 2011 Kia Sportage. *See id.* ¶ 45.

          However, besides the bald assertion that all the Class Vehicles contained the same defect, the FAC does not allege that anyone owning or leasing a 2010 Kia Optima manufactured after April 29, 2010 or a 2011 Kia Sedona manufactured after December 31, 2010 actually experienced the Defect as Plaintiff did with his 2011 Kia Sportage. *See id.* ¶¶ 29-30. Because the FAC generally lacks specificity regarding Defendant's representations about its warranty or the Brake Defect, *see* Part II.B.1.b, Part II.B.1.d, and Part II.b.3, the FAC also fails to sufficiently allege that Defendant's representations and omissions about its warranty and the Brake Defect were similar for all of the Class Vehicles.

          Accordingly, Defendant's Motion to Strike the class allegations as to the 2010 Kia Optima and 2011 Kia Sedona models is GRANTED.

**IV.     Disposition**

          For the foregoing reasons, the Court ORDERS as follows:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1148-DOC (MANx)                          Date: December 29, 2014
                                                                          Page 26

(1) Defendant's Motion to Dismiss is DENIED as to Plaintiff's FDUTPA claim;
    implied warranty claim under California law; Magnuson-Moss Warranty Act
    claims; and common counts / assumpsit;

(2) Defendant's Motion to Dismiss is GRANTED as to Plaintiff's UCL and CLRA
    claims; express warranty claims; and implied warranty claim under Florida law.
    These claims are DISMISSED with leave to amend;

(3) Defendant's Motion to Strike is DENIED without prejudice as to Plaintiff's
    nationwide class allegations;

(4) Defendant's Motion to Strike is GRANTED as to Plaintiff's class allegations
    regarding the 2010 Kia Optima and 2011 Kia Sedona models, with leave for
    Plaintiff to amend; and

(5) Plaintiff shall file an amended complaint, if any, on or before **January 19, 2015**.

    The Clerk shall serve this minute order on the parties.


MINUTES FORM 11
CIVIL-GEN                                          Initials of Deputy Clerk:  djg